## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| MEDLINE INDUSTRIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No.  08 CH 25802 |
| | ) | **FILED: AUG. 07, 2008** |
| v. | ) | **08CV4469** |
| | ) | **JUDGE GUZMAN** |
| RF SURGICAL SYSTEMS, INC. | ) | **MAGISTRATE JUDGE VALDEZ** |
| | ) | **AEE** |
| Defendant. | ) | **NOTICE OF REMOVAL** |
| | ) | |

## NOTICE OF REMOVAL

Defendant RF Surgical Systems, Inc. ("RF Surgical") hereby removes this action from the Circuit Court of Cook County, Illinois, County Department, Chancery Division to the United States District Court for the Northern District of Illinois, pursuant to 28 U.S.C. §1441(b).

This Notice advances arguments regarding removal under 28 U.S.C. §§1332, 1441, and 1446. RF Surgical disputes the accuracy of the allegations in the complaint. RF Surgical will rebut these allegations at the appropriate stage in the appropriate forum, which it believes to be the United States District Court for the Northern District of Illinois. As grounds for removal, RF Surgical states as follows:

1.  On July 17, 2008, Plaintiff Medline, Industries, Inc. ("Medline") purportedly filed its original complaint in the Circuit Court of Cook County, Illinois, County Department, Chancery Division.  The action is entitled, *Medline Industries, Inc. v. RF Surgical*

*Systems, Inc.*, Case No. 08 CH 25802 (the "Action"). RF Surgical was not served with the original complaint.

2.  On July 22, 2008, Medline filed its Motion for Leave to File First Amended Complaint, and its First Amended Complaint with the Circuit Court of Cook County, Illinois.

3.  Attached are the papers received by RF Surgical, which include Medline's Complaint, Medline's Motion for Leave to File First Amended Complaint, Medline's First Amended Complaint, and Medline's Notice of Motion to RF Surgical (attached as Exhibit A).

4.  Medline's First Amended Complaint alleges a breach of contract claims, and two claims for declaratory relief related to a sales agreement between Medline and RF Surgical ("Sales Agreement"). *See* First Amended Complaint ¶¶3-4.

5.  The Action is removable under 28 U.S.C. §1441(b) because it is founded on complete diversity of citizenship under 28 U.S.C. §1332(a)(1).

    a.  Medline is an Illinois corporation, with its principal place of business in Mundelein, Illinois. *See* First Amended Complaint ¶1.

    b.  RF Surgical is a Washington corporation, with its principal place of business in Bellevue, Washington. *See* First Amended Complaint ¶2.

6.  RF Surgical denies that it has any liability to Medline. However for purposes of removal only, RF Surgical acknowledges that the amount in controversy is in excess of the jurisdictional requirement under 28 U.S.C. §1332(a). The Action centers on the Sales Agreement, which states that Medline's minimum purchase obligation was $5,000,000 for the first year of the contract term, and double the first year's actual sales for the second year of the contract term. *See* Sales Agreement, which is attached to, and thereby incorporated in, the First Amended Complaint. Therefore, the amount in controversy is

in excess of $75,000, exclusive of interests and costs, which meets the jurisdictional requirement of 28 U.S.C. §1332(a).

7. The Circuit Court of Cook County, Illinois is located within the United States District Court for the Northern District of Illinois. Therefore, venue is proper because it is the "district and division embracing the place where such action is pending." 28 U.S.C. §1441(a).

8. RF Surgical received the Complaint on July 24, 2008 after Medline filed its Motion for Leave to File First Amended Complaint. Therefore, this Notice of Removal is timely pursuant to 28 U.S.C. §1446(b) because it is "filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based."

9. Pursuant to 28 U.S.C. §1446(d), RF Surgical will promptly file a copy of this Notice of Removal with the Circuit Court of Cook County, Illinois, County Department, Chancery Division.

10. By filing this Notice of Removal, RF Surgical does not waive any defenses, objections or motions available to them under state or federal law.

Dated: August 7, 2008

Respectfully submitted,

/s/ Patrick J. Lamb
Patrick J. Lamb (ARDC # 6182882)
Henry E. Turner, Jr. (ARDC # 6295517)
VALOREM LAW GROUP, LLC
35 E. Wacker Drive, Ste. 2900
Chicago, IL 60601
patrick.lamb@valoremlaw.com
hank.turner@valoremlaw.com
312-676-5462 (phone)
312-676-5473 (phone)

312-676-5499 (facsimile)

Of Counsel

Ralph H. Palumbo
Denise L. Ashbaugh
SUMMIT LAW GROUP
315 Fifth Avenue South, Ste. 1000
Seattle, WA 98104
ralphp@summitlaw.com
denisea@summitlaw.com
206-676-7000 (phone)
509-892-3765

Counsel for RF Surgical Systems, Inc.

## CERTIFICATE OF SERVICE

I certify that a copy of this notice was filed electronically with the United States Court for the Northern District of Illinois, Eastern Division, on August 7, 2008. Notice of this filing will be sent to the parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. I certify that a copy of this notice has been served on the opposing counsel listed below by depositing a copy of it in the United States mail, first class postage prepaid, on August 7, 2008. I further certify that a copy of this notice was filed by hand delivery with the Circuit Court for Cook County on August 7, 2008.

Jodi Rosen Wine
Edward F. McCormack
Nixon Peabody LLP
161 N. Clark St., 48th Floor
Chicago, IL 60601
*Attorneys for Plaintiff*

Respectfully submitted,

/s/ Patrick J. Lamb
Patrick J. Lamb
VALOREM LAW GROUP, LLC
35 E. Wacker Drive, Ste. 2900
Chicago, IL 60601

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MEDLINE INDUSTRIES, INC.,       ) | |
|       ) | |
|     Plaintiff,       ) | Case No.  08 CH 25802 |
|       ) | **FILED: AUG. 07, 2008** |
|     v.       ) | **08CV4469** |
|       ) | **JUDGE GUZMAN** |
| RF SURGICAL SYSTEMS, INC.       ) | **MAGISTRATE JUDGE VALDEZ** |
|       ) | **AEE** |
|     Defendant.       ) | **NOTICE OF FILING** |
|       ) | |

**<u>NOTICE OF FILING</u>**

To:  Jodi Rosen Wine
    Edward F. McCormack
    Nixon Peabody LLP
    161 N. Clark St., 48th Floor
    Chicago, IL 60601

       On August 7, 2008, Defendant RF Surgical Systems, Inc. filed a Notice of Removal, a copy of which is served upon you.

                                  Dated: August 7, 2008

                                  <u>/s/ Patrick J. Lamb</u>
                                  Patrick J. Lamb

## CERTIFICATE OF SERVICE

I certify that a copy of the Notice of Removal will be sent to the above counsel on August 7, 2008 by postage pre-paid mail on August 7, 2008.

Dated: August 7, 2008

/s/ Patrick J. Lamb
Patrick J. Lamb

Patrick J. Lamb
VALOREM LAW GROUP, LLC
35 E. Wacker Drive, Suite 2900
Chicago, IL 60601
(312) 676-5462 (phone)
(312) 676-5499 (facsimile)
patrick.lamb@valoremlaw.com
ARDC#: 6182882

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| MEDLINE INDUSTRIES, INC., ) | 08CH 25802 |
| Plaintiff, ) | Case No. _____ |
| ) | Judge _____ |
| v. ) | **JURY DEMANDED** |
| RF SURGICAL SYSTEMS, INC. ) | |
| Defendant. ) | |

## COMPLAINT

Medline Industries, Inc., by and through its attorneys, hereby complains against RF Surgical Systems ("RFS"), as follows:

### Nature Of The Action

1.     Plaintiff Medline Industries, Inc. ("Medline") is a corporation incorporated under the laws of the State of Illinois with its principal place of business in Mundelein, Illinois. Medline manufactures and distributes health care supplies.

2.     On information and belief, Defendant RF Surgical Systems, Inc. ("RFS") is a corporation incorporated under the laws of the state of Washington, with its principal place of business in Bellevue, Washington.

3.     Medline and RFS are parties to an Exclusive Sales Agreement dated September 27, 2005, and amended on February 7, 2006 (the "Agreement," attached as Exhibit A). The Agreement governs the distribution of wand detectors and monitors designed and/or manufactured by RFS for use in the detection of surgical products that are left in the body of surgical patients (hereinafter the "Wand Technology Products").

11087907.1

4.    Pursuant to the Exclusive Sales Agreement, RFS granted to Medline the exclusive right to purchase Wand Technology Products from RFS for use and distribution in the United States and Canada. Additionally, RFS granted to Medline a coterminous license to manufacture for resale and distribution the sponges, gauze and towels imbedded with detectible "chips" that are detectable using the Wand Technology Products.

5.    RFS granted Medline these exclusive rights for a period of six years from the effective date of the agreement. Thus these exclusive rights are scheduled to expire on September 27, 2011, but may be extended by written amendment.

6.    Medline committed to purchase a minimum volume of $5,000,000 of Wand Technology from RFS during the first year, as measured from the date of first delivery. As a result in part of the defects in the Wand Technology Products, Medline informed RFS that it could not meet the first year minimums described in the Agreement. In the fourth quarter of 2007, RFS waived those minimums.

7.    Notwithstanding its exclusivity arrangement with Medline, RFS has taken the position that it may directly market and distribute its products in Puerto Rico, which RFS claims is outside of Medline's exclusive territory. Puerto Rico is unquestionably a territory of the United States and part of North America, and thus falls within Medline's exclusive territory.

8.    Upon information and belief, RFS has sold Wand Technology Products to competitors of Medline for distribution in Puerto Rico.

9.    RFS has breached the Exclusive Sales Agreement in several material respects, including: (a) offering to sell Wand Technology Products directly to customers within Medline's exclusive territory; (b) providing defective products in breach of the warranty provisions contained in paragraph 5 of the agreement; (c) failing to provide the certificate of insurance

1108789071.1

coverage as required in paragraph 7 of the agreement; (d) negotiating with Medline's competitors for the entry of a distribution agreement for the Wand Technology in the territory which is covered by the Exclusive Sales Agreement; and (e) providing samples of Wand Technology Products to competitors of Medline.

10.    Despite these breaches, RFS has, on July 14, 2008, threatened to change Medline's status from exclusive distributor to non-exclusive distributor based upon its charge that Medline has not met first year minimum sales requirements as described in the Agreement.

11.    That first year minimum had been waived by RFS, at least partly in recognition that performance issues associated with the Wand Technology had prevented Medline from reaching the sales minimum in the first year of the Agreement.

## Count I – Breach of Contract

1.    Medline incorporates by reference the preceding paragraphs as though fully set forth herein.

2.    The Exchange Sales Agreement, as amended, is a valid contract between Medline and RFS.

3.    Medline has performed or been excused from all conditions of the Exclusive Sales Agreement.

4.    As described above, RFS is in breach of the Agreement.

5.    Medline has been damaged as a direct and proximate result of Defendants' breach in an amount exceeding $50,000.00.

3

1108790?.1

## Count II – Declaratory Judgment

1.    Medline incorporates by reference the preceding paragraphs as though fully set forth herein.

2.    An actual controversy exists, as RFS has asserted that it intends to change Medline's status as an exclusive distributor, and Medline contends that RFS does not have the right to alter the Agreement as it has asserted.

3.    Medline has an important interest in the outcome of this controversy as loss of its status as exclusive distributor of the Wand Technology will cause substantial loss of money and customer goodwill.

WHEREFORE, Medline prays this Court to enter judgment in its favor and against RF Surgical Systems, Inc., and declare and order:

1.    That RF Surgical Systems comply with the terms of the Exclusive Sales Agreement, and specifically that RF Surgical Systems may not convert Medline from an exclusive distributor to a non-exclusive distributor;

2.    That Medline be awarded damages in amount sufficient to compensate it for the losses incurred as a result of defendant's breach;

3.    That Medline be awarded its costs of bringing this lawsuit (including attorneys' fees); and

4.    For such other and further relief as the court may deem just and proper.

Dated: July 17, 2008

Respectfully submitted,

MEDLINE INDUSTRIES, INC.

By: _____
One of its attorneys

Jodi Rosen Wine
(jwine@nixonpeabody.com)
Edward F. McCormack
(emccormack@nixonpeabody.com)
NIXON PEABODY LLP
161 N. Clark Street, 48th Floor
Chicago, Illinois 60601
(312) 425-3900 (phone)
(312) 425-3909 (facsimile)

11083907.1

5

## EXCLUSIVE SALES AGREEMENT

This Agreement is effective September 27, 2005, and is between RF Surgical Systems, Inc. ("RFS") and Medline Industries, Inc. ("Medline").

WHEREAS RFS is in the business of designing, manufacturing and selling equipment for use in the healthcare industry;

WHEREAS RFS has developed and is able to manufacture monitors and disposable wands used to detect in patients surgical products, such as sponges, gauze and towels, imbedded with detectible "chips" (all technology and products relating to wand-detectible surgical products referred to herein as the "Wand Technology");

WHEREAS Medline is in the business of manufacturing and distributing medical supplies for use in the healthcare industry, surgical products;

WHEREAS the parties wish to memorialize their relationship with respect to the Wand Technology.

It is hereby agreed as follows:

1.    *Exclusivity.* RFS grants to Medline the exclusive right to purchase Wand Technology manufactured and sold by RFS for use and distribution in the United States and Canada (the "Territory"). RFS represents and covenants that it has not made, and shall not make, any grant inconsistent with the foregoing grant to Medline. "Wand Technology" as used herein shall include all current and later-developed devices (including but not limited to subsequent releases and versions of existing models), the intended or potential use or function of which is to detect surgical products in the body, that are entirely, partially, directly or indirectly designed and/or manufactured by RFS, currently in production by RFS is identified on Exhibit B, which shall be amended from time to time to identify future Wand Technology designed and/or manufactured by RFS after the effective date of this Agreement. The computers/monitors are to be provided to Medline and/or Medline's customers on a demo loaner basis by RFS, at no additional cost or license fee, for use by Medline customers that purchase the disposable RFS Wand sponges/gauze/towels on an annual contract basis. Medline shall purchase Wand Technology (wands and tags/chips) exclusively from RFS, pursuant to the terms hereof and Exhibit B, provided that RFS otherwise is and remains in compliance with the terms and conditions of this Agreement. RFS shall use Medline as their exclusive North American distributor provided Medline satisfies the Exclusivity Commitment on Exhibit B. Medline covenants that so long as (a) the Wand Technology performs according to the specifications on Exhibit B, (b) the Agreement is in effect, and (c) Medline retains its exclusivity hereunder, Medline will not market, sell or distribute any competing product to the Wand Technology.

2. *Manufacturing license.* RFS grants Medline a manufacturing license to manufacture the sponges, gauze and towels ("Ancillary Products.") for resale and distribution in the Territory, at no additional cost or license fee to Medline. This license shall coincide and be coterminous with the term of the Agreement, as provided in Section 3, below.

3. *Term.* This Agreement and the mutual exclusivity of Section 1 above shall be effective for a period of six years from the effective date. This Agreement may be extended by subsequent written amendment, signed by both parties. This Agreement may be terminated for material breach on 60 days written notice (by the non-breaching party), in the event the breaching party fails to cure the breach within 30 days of notice, or upon the insolvency of either party (by the solvent party). This Agreement may be terminated by either party for any or no reason on 180 days written notice. Medline may terminate this Agreement in the event of an unsatisfactory result in the test described in Exhibit C.

4. *Specific terms of sale.* Price, quantity, delivery and other specific terms of sale of the Wand Technology are identified on Exhibits B.

5. *Warranties and indemnities.* RFS warrants that the Wand Technology shall comply with all specifications and shall be free from defects in material, workmanship, design, warnings and packaging. RFS warrants that the Wand Technology does not infringe or misappropriate the patent or intellectual property rights of any third party. RFS shall defend, indemnify and hold harmless Medline against any and all claims, suits, liabilities and damages, and the costs thereof (including attorneys fees), including but not limited to claims of personal injury, property damage, or intellectual property infringement, arising out of the sale or use of the Wand Technology sold hereunder, or any breach of this Agreement by RFS. Medline shall defend, indemnify, and hold harmless RFS against any and all claims, suits, liabilities and damages, and the costs thereof (including attorneys fees) arising out of any breach of this Agreement by Medline or any defect in any Ancillary Product, provided that such defect is unrelated to the Wand Technology. RFS shall add Medline as an additional insured on RFS' general liability insurance policies in effect during term of this Agreement.

6. *Limited liability.* NEITHER PARTY SHALL BE LIABLE TO THE OTHER FOR CONSEQUENTIAL OR INDIRECT DAMAGES, INCLUDING BUT NOT LIMITED TO LOST PROFITS, UNDER ANY THEORY OR ANY SET OF FACTS OR CIRCUMSTANCES, WHETHER OR NOT ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

7. *Insurance.* Each party shall maintain, during the term of this Agreement, at its own expense, product liability insurance with a minimum per occurrence coverage amount of $1,000,000 and an aggregate coverage amount of $10,000,000. Each party shall shall furnish the other with a certificate showing the applicable coverage, naming the other party as an additional insured, and providing at least thirty (30) days' prior written notice to the other of cancellation, modification or material change to the policy.

8.    *Miscellaneous*.  This Agreement shall be binding on and inure to the benefit of each party's successors and assigns.  This Agreement may be signed in counterparts.  This Agreement is the complete, integrated agreement between the parties on the subject matters herein, and no prior, contemporaneous or subsequent writing, statement or representation shall modify this Agreement.  This Agreement may only be modified by written amendment signed by both parties.

Agreed to and accepted this 27' day of September, 2005:

RFS Systems Inc.

By: _____
Name: KEVIN COSENS
Its: CEO

Medline Industries, Inc.

By: _____
Name: Jack A. Bowser, Jr.
Its: President Primary Care Div.

# Exhibit B

## Exclusivity commitment

### Year 1

Medline agrees to comprehensively test (regionally) the Wand Technology for a period of six months following the issue of 510K. If the test results are satisfactory to Medline, then Medline will introduce the product to its entire acute care sales force over the next six months. Medline will invest in a commercially reasonable amount of literature, training, inventory, in-servicing new accounts and incentives for the sales force. The first year purchase commitment begins after the 510K has been issued and the first shipment is received in a Medline warehouse. The committed purchases volume for year one is $5,000,000.00. In the event Medline fails to satisfy the minimum purchase commitment in any year or period of this Agreement, then RFS' sole remedy shall be terminate Medline's exclusivity or the Agreement in its entirety; under no facts or circumstances shall Medline be liable to RFS for damages for any failure to satisfy any committed purchase requirement.

### Year 2 Purchase commitments will be double first year actual sales

### Year 3 through 5 commitments will be mutually agreed upon.

If Medline fails to meet the commitment in year 2 through 5, exclusivity will be waived but Medline retains the right to buy and sell the wand technology/products. If RF Surgical establishes their own sales force/ or distributor, they will not target/convert any account where Medline is already selling the RF Surgical products for two years.

## Wand Terms

Medline wand acquisition cost is $2x.00 for the first year. Wand acquisition price can be adjusted annually based upon market conditions (upward or downward), working to maintain Medline's minimum goal of 32% GP.

Medline payment terms for wand will be one day net dating.

Medline will pay for shipping.

Computer/monitors will be provided on a demo-/loaner basis to Medline's hospitals that commit to annual contracts to purchase RFS wand and disposable products. Medline will

supply copies of hospital's contract to RF Surgical before monitors are shipped to hospitals.

Medline's sales force will be responsible for bi-annual inventory control of monitors.

# Tag Terms

Medline's tag acquisition cost for the first year is six cents per tag.

Medline will be responsible for tag attachment to their sponge and gauze products.

Payment and shipping terms will be same as Wand above.

Medline or its manufacturing agents will not seek or apply for intellectual property rights or patents related to any aspect of our products or systems.

(2)

## VENDOR CONFIDENTIALITY ACKNOWLEDGMENT

This signed writing is an amendment to that certain Exclusive Sales Agreement (the "Agreement"), dated and effective September 27, 2005, by and between RF Surgical Systems, Inc. ("RF, or "you") and Medline Industries, Inc. ("Medline"). You acknowledge, understand and agree to the following:

(a)    Pursuant to Section 2 of the Agreement, Medline shall manufacture the Ancillary Products through third party factories. The identities of, locations of and other information concerning the factories, which will be disclosed to you in the course of performing the Agreement, are facts that Medline intends to keep secret from its competitors;

(b)    the terms of your agreements with Medline and its factories, including but not limited to the costs of, specifications, design and processes for, and your prices to Medline of the products sourced through the factories is information that Medline intends to keep secret from its competitors;

(c)    you, as a manufacturing vendor with knowledge of the secret information described in (a) and (b) above, have maintained and will continue to maintain the confidentiality of this information and any other information about Medline and your relationship with Medline and/or its factories, and have not disclosed and will not disclose this information to Medline's competitors, or anyone else, without Medline's written consent; and

(d)    For the duration of your Agreement with Medline, plus a period of two years thereafter, you will not sell products, directly or indirectly through any distributor or competitor of Medline, for resale and/or importation into the United States, that are of the same type and kind as those sourced through the factories pursuant to the Agreement.

Medline Industries, Inc.                              RF Surgical Systems, Inc.

By: _____                                By: _____
Its: _Consultant Primary Contact_                    Its: _CEO_
Date: _7-7-06_                                        Date: _03/01/06_

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT/CHANCERY DIVISION

(Rev. 12/4/00)    CCCH 0623

Medline Industries, Inc. Plaintiff

                                          Plaintiff

                    v.                              Case No. _____    08CH25006

RF Surgical Systems, Inc. Defendant

                                          Defendant

## CHANCERY DIVISION CIVIL COVER SHEET

A Chancery Division Civil Cover Sheet shall be filed with the initial complaint in all actions filed in the Chancery Division. The information contained herein is for Administrative purposes only and shall not be introduced into evidence. Please check the box in front of the appropriate category which best characterizes your action being filed.

| | | |
|---|---|---|
| 005 ___ | Administrative Review | |
| 006 ___ | Change of Name | |
| 001 ___ | Class Action | |
| 002 ✓ | Declaratory Judgment | |
| 004 ___ | Injunction | |
| 008 ___ | Mechanic's Lien | |
| 003 ___ | Mortgage Foreclosure | |

| | | |
|---|---|---|
| 007 ___ | General Chancery | |
| ___ | Accounting | ___ Partition |
| ___ | Arbitration Awards | ___ Quiet Title |
| ___ | Certiorari | ___ Quo Warranto |
| ___ | Dissolution of Corporation | ___ Redemption Rights |
| ___ | Dissolution of Partnership | ___ Reformation of a Contract |
| ___ | Equitable Lien | ___ Rescission of a Contract |
| ___ | Interpleader | ___ Specific Performance |
| ___ | Mandamus | ___ Trust Construction |
| ___ | Ne Exeat | ___ Other |

Atty. No.: ____43523

Name: Nixon Peabody LLP/Jodi Rosen Wine

Atty. for: Medline Industries, Inc. Plaintiff

Address: 161 North Clark Street, 48th Floor

City/State/Zip: Chicago, IL 60601-3213

Telephone: (312) 425-3900

By: _____
                    Attorney                    Pro Se

2008 JUL 17 PM 3: 54

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

1910 - No Fee Paid
1919 - Fee Paid
Jury Demand

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

CCG N067-10M-6/09/04 (

Medline Industries, Inc.

v.

No. _____

RF Surgical Systems, Inc.

**JURY DEMAND**

The undersigned demands a jury trial.

_____
(Signature)

Dated: July 17 _____, 2008

Atty. No.: 43523
Name: Nixon Peabody LLP
Atty. for: Medline Industries, Inc.
Address: 161 North Clark Street, Suite 4800
City/State/Zip: Chicago, IL 60601
Telephone: 312-425-3900

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

2008 JUL 17 PM 3: 56

11087907 1

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

FILED-CH

2008 JUL 22  PM 3:35

MEDLINE INDUSTRIES, INC.,

    Plaintiff,

    v.

RF SURGICAL SYSTEMS, INC.

    Defendant.

)
)
)
)
)
)
)
)
)
)

Case No.  08 CH 25802

**JURY DEMANDED**

**MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**

NOW COMES Medline Industries, Inc., by and through its attorneys, moves this Court, pursuant to 735 ILCS 5/2-616 to file the attached First Amended Complaint.  In support, Medline states as follows:

1.    Medline filed the Complaint in this action on July 17, 2008.  As of the filing of this motion to amend, Medline has not even been informed that the complaint has been served.

2.    Events of today's date have alerted Medline that RF Surgical intends to breach the agreement at issue between the parties in another fashion.  Medline has amended its complaint to seek declaratory relief related to that breach.  Medline is filing this amendment at its earliest possible opportunity.

3.    RF Surgical will not be prejudiced by this amendment, as it may not yet have been served with the original complaint, and it has not answered or otherwise responded to the original complaint.

WHEREFORE, Medline requests that it be granted leave to file the attached First Amended Complaint.

Dated: July 22, 2008

Respectfully submitted,

MEDLINE INDUSTRIES, INC.

By: _____
    One of its attorneys

Jodi Rosen Wine
(jwine@nixonpeabody.com)
Edward F. McCormack
(emccormack@nixonpeabody.com)
NIXON PEABODY LLP
161 N. Clark Street, 48th Floor
Chicago, Illinois 60601
(312) 425-3900 (phone)
(312) 425-3909 (facsimile)

11087907.1

2

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

MEDLINE INDUSTRIES, INC.,

    Plaintiff,

    v.

RF SURGICAL SYSTEMS, INC.

    Defendant.

)
)
)
)
)
)
)
)
)
)

Case No. 08 CH 25802

**JURY DEMANDED**

## FIRST AMENDED COMPLAINT

Medline Industries, Inc., by and through its attorneys, hereby complains against RF Surgical Systems ("RFS"), as follows:

## Nature Of The Action

1.    Plaintiff Medline Industries, Inc. ("Medline") is a corporation incorporated under the laws of the State of Illinois with its principal place of business in Mundelein, Illinois. Medline manufactures and distributes health care supplies.

2.    On information and belief, Defendant RF Surgical Systems, Inc. ("RFS") is a corporation incorporated under the laws of the state of Washington, with its principal place of business in Bellevue, Washington.

3.    Medline and RFS are parties to an Exclusive Sales Agreement dated September 27, 2005, and amended on February 7, 2006 (the "Agreement," attached as Exhibit A). The Agreement governs the distribution of wand detectors and monitors designed and/or manufactured by RFS for use in the detection of surgical products that are left in the body of surgical patients (hereinafter the "Wand Technology Products").

110879907.1

**Medline Exclusivity**

4. Pursuant to the Exclusive Sales Agreement, RFS granted to Medline the exclusive right to purchase Wand Technology Products from RFS for use and distribution in the United States and Canada. Additionally, RFS granted to Medline a coterminous license to manufacture for resale and distribution the sponges, gauze and towels imbedded with detectible "chips" that are detectible using the Wand Technology Products (the "Ancillary Products").

5. RFS granted Medline these exclusive rights for a period of six years from the effective date of the agreement. Thus these exclusive rights are scheduled to expire on September 27, 2011, but may be extended by written amendment.

6. Medline committed to purchase a minimum volume of $5,000,000 of Wand Technology from RFS during the first year, as measured from the date of first delivery. As a result in part of the defects in the Wand Technology Products, Medline informed RFS that it could not meet the first year minimums described in the Agreement. In the fourth quarter of 2007, RFS waived those minimums.

7. Notwithstanding its exclusivity arrangement with Medline, RFS has taken the position that it may directly market and distribute its products in Puerto Rico, which RFS claims is outside of Medline's exclusive territory. Puerto Rico is unquestionably a territory of the United States and part of North America, and thus falls within Medline's exclusive territory.

8. Upon information and belief, RFS has sold Wand Technology Products to competitors of Medline for distribution in Puerto Rico.

9. RFS has breached the Exclusive Sales Agreement in several material respects, including: (a) offering to sell Wand Technology Products directly to customers within Medline's exclusive territory; (b) providing defective products in breach of the warranty provisions contained in paragraph 5 of the agreement; (c) failing to provide the certificate of insurance

2

1108790v.1

coverage as required in paragraph 7 of the agreement; (d) negotiating with Medline's competitors for the entry of a distribution agreement for the Wand Technology in the territory which is covered by the Exclusive Sales Agreement; and (e) providing samples of Wand Technology Products to competitors of Medline.

10.     Despite these breaches, RFS has, on July 14, 2008, threatened to change Medline's status from exclusive distributor to non-exclusive distributor based upon its charge that Medline has not met first year minimum sales requirements as described in the Agreement.

11.     That first year minimum had been waived by RFS, at least partly in recognition that performance issues associated with the Wand Technology had prevented Medline from reaching the sales minimum in the first year of the Agreement.

<u>Vendor Confidentiality Agreement</u>

12.     In early 2006, RFS asked Medline for information related to the Medline vendors who manufactured the Ancillary Products for Medline. As information related to the overseas manufacturers of these products was extremely proprietary, Medline representatives informed RFS representatives that it would only disclose the information subject to a confidentiality agreement.

13.     As part of that agreement, Medline informed RFS that it would provide the vendor information only if RFS agreed that it would not distribute the Ancillary Products into the United States during the duration of the Agreement and for a period of two years thereafter.

14.     On February 7, 2006, Medline and RFS executed the Vendor Confidentiality Agreement (incorporated into Exhibit A). In that document, RFS agreed that: "For the duration of your Agreement with Medline, plus a period of two years thereafter, you will not sell products, directly or indirectly through any distributor or competitor of Medline, for resale

1108790?.1

and/or importation into the United States, that are of the same type and kind as those sourced through the factories pursuant to the Agreement."

15.    On July 22, 2008, RFS informed Medline that it intends to breach the Agreement as amended by distributing the Ancillary Products to Medline's competitors through Chinese cotton manufacturers.  In that communication, Kevin Cosens, CEO of RFS, stated: " . . . going forward RF Surgical will sell our 'tag only' (no auxiliary products (sic) 'that are of the same type or kind as those sourced through the factories') to any and all independent Chinese cotton manufacturers that may/will sell to suppliers such as Cardinal, PHS, AVID, Medical Action, Owen & Minor and Covidien which explicitly will not interfere or breach the past amendment of the agreement."

16.    By this statement, RFS has indicated an intent to breach the terms of the Agreement, which prohibit this indirect sale of Ancillary Products through other distributors or competitors of Medline.  Each of the distributors named in the July 22, 2008 communication is a Medline competitor.

### Count I – Breach of Contract

1.    Medline incorporates by reference the preceding paragraphs as though fully set forth herein.

2.    The Exchange Sales Agreement, as amended, is a valid contract between Medline and RFS.

3.    Medline has performed or been excused from all conditions of the Exclusive Sales Agreement.

4.    As described above, RFS is in breach of the Agreement.

11087907.1

4

5.    Medline has been damaged as a direct and proximate result of Defendants' breach in an amount exceeding $50,000.00.

## Count II – Declaratory Judgment (Exclusivity)

1.    Medline incorporates by reference the preceding paragraphs as though fully set forth herein.

2.    An actual controversy exists, as RFS has asserted that it intends to change Medline's status as an exclusive distributor, and Medline contends that RFS does not have the right to alter the Agreement as it has asserted.

3.    Medline has an important interest in the outcome of this controversy, as loss of its status as exclusive distributor of the Wand Technology will cause substantial loss of money and customer goodwill.

## Count III – Declaratory Judgment (Vendor Confidentiality Agreement)

1.    Medline incorporates by reference the preceding paragraphs as though fully set forth herein.

2.    An actual controversy exists, as RFS has asserted that it intends to distribute Ancillary Products through other distributors and/or competitors of Medline, and Medline contends that RFS does not have the right to distribute Ancillary Products through other distributors and/or competitors of Medline in the manner described in RFS' July 22, 2008 communication.

3.    Medline has an important interest in the outcome of this controversy, as it disclosed important proprietary information to RFS in reliance on the terms of the Vendor

1108759071

Confidentiality Agreement and RFS' threatened breach will cause it irreparable harm, as well as substantial loss of money and customer goodwill.

WHEREFORE, Medline prays this Court to enter judgment in its favor and against RF Surgical Systems, Inc., and declare and order:

1.     That RF Surgical Systems comply with the terms of the Exclusive Sales Agreement, and specifically (a) that RF Surgical Systems may not convert Medline from an exclusive distributor to a non-exclusive distributor, and (b) that RFS may not distribute Ancillary Products either directly or indirectly in the United States through any other distributor and/or competitor of Medline;

2.     That Medline be awarded damages in amount sufficient to compensate it for the losses incurred as a result of defendant's breach;

3.     That Medline be awarded its costs of bringing this lawsuit (including attorneys' fees); and

4.     For such other and further relief as the court may deem just and proper.

Dated:  July 22, 2008

Respectfully submitted,

MEDLINE INDUSTRIES, INC.

By:  _____

One of its attorneys

Jodi Rosen Wine
(jwine@nixonpeabody.com)
Edward F. McCormack
(emccormack@nixonpeabody.com)
NIXON PEABODY LLP
161 N. Clark Street, 48th Floor
Chicago, Illinois  60601
(312) 425-3900 (phone)
(312) 425-3909 (facsimile)
Firm ID. No. 43523

11087907.1

6

## EXCLUSIVE SALES AGREEMENT

This Agreement is effective September 27, 2005, and is between RF Surgical Systems, Inc. ("RFS") and Medline Industries, Inc. ("Medline").

WHEREAS RFS is in the business of designing, manufacturing and selling equipment for use in the healthcare industry;

WHEREAS RFS has developed and is able to manufacture monitors and disposable wands used to detect in patients surgical products, such as sponges, gauze and towels, imbedded with detectible "chips" (all technology and products relating to wand-detectible surgical products referred to herein as the "Wand Technology");

WHEREAS Medline is in the business of manufacturing and distributing medical supplies for use in the healthcare industry; surgical products;

WHEREAS the parties wish to memorialize their relationship with respect to the Wand Technology.

It is hereby agreed as follows:

1.      _Exclusivity._  RFS grants to Medline the exclusive right to purchase Wand Technology manufactured and sold by RFS for use and distribution in the United States and Canada (the "Territory"). RFS represents and covenants that it has not made, and shall not make, any grant inconsistent with the foregoing grant to Medline. "Wand Technology" as used herein shall include all current and later-developed devices (including but not limited to subsequent releases and versions of existing models), the intended or potential use or function of which is to detect surgical products in the body, that are entirely, partially, directly or indirectly designed and/or manufactured by RFS, currently in production by RFS is identified on Exhibit B, which shall be amended from time to time to identify future Wand Technology designed and/or manufactured by RFS after the effective date of this Agreement. The computers/ monitors are to be provided to Medline and/or Medline's customers on a demo loaner basis by RFS, at no additional cost or license fee, for use by Medline customers that purchase the disposable RFS Wand/ sponges/gauze/towels on a annual contract basis. Medline shall purchase Wand Technology (wands and tags/chips) exclusively from RFS, pursuant to the terms hereof and Exhibit B, provided that RFS otherwise is and remains in compliance with the terms and conditions of this Agreement. RFS shall use Medline as their exclusive North American distributor provided Medline satisfies the Exclusivity Commitment on Exhibit B. Medline covenants that so long as (a) the Wand Technology performs according to the specifications on Exhibit B, (b) the Agreement is in effect, and (c) Medline retains its exclusivity hereunder, Medline will not market, sell or distribute any competing product to the Wand Technology.

2.    *Manufacturing license.* RFS grants Medline a manufacturing license to manufacture the sponges, gauze and towels ("Ancillary Products,") for resale and distribution in the Territory, at no additional cost or license fee to Medline. This license shall coincide and be coterminous with the term of the Agreement, as provided in Section 3, below.

3.    *Term.* This Agreement and the mutual exclusivity of Section 1 above shall be effective for a period of six years from the effective date. This Agreement may be extended by subsequent written amendment, signed by both parties. This Agreement may be terminated for material breach on 60 days written notice (by the non-breaching party), in the event the breaching party fails to cure the breach within 30 days of notice, or upon the insolvency of either party (by the solvent party). This Agreement may be terminated by either party for any or no reason on 180 days written notice. Medline may terminate this Agreement in the event of an unsatisfactory result in the test described in Exhibit C.

4.    *Specific terms of sale.* Price, quantity, delivery and other specific terms of sale of the Wand Technology are identified on Exhibits B.

5.    *Warranties and indemnities.* RFS warrants that the Wand Technology shall comply with all specifications and shall be free from defects in material, workmanship, design, warnings and packaging. RFS warrants that the Wand Technology does not infringe or misappropriate the patent or intellectual property rights of any third party. RFS shall defend, indemnify and hold harmless Medline against any and all claims, suits, liabilities and damages, and the costs thereof (including attorney's fees), including but not limited to claims of personal injury, property damage, or intellectual property infringement, arising out of the sale or use of the Wand Technology sold hereunder, or any breach of this Agreement by RFS. Medline shall defend, indemnify, and hold harmless RFS against any and all claims, suits, liabilities and damages, and the costs thereof (including attorneys fees) arising out of any breach of this Agreement by Medline or any defect in any Ancillary Product, provided that such defect is unrelated to the Wand Technology. RFS shall add Medline as an additional insured on RFS' general liability insurance policies in effect during term of this Agreement.

6.    *Limited liability.* NEITHER PARTY SHALL BE LIABLE TO THE OTHER FOR CONSEQUENTIAL OR INDIRECT DAMAGES, INCLUDING BUT NOT LIMITED TO LOST PROFITS, UNDER ANY THEORY OR ANY SET OF FACTS OR CIRCUMSTANCES, WHETHER OR NOT ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

7.    *Insurance.* Each party shall maintain, during the term of this Agreement, at its own expense, product liability insurance with a minimum per occurrence coverage amount of $1,000,000 and an aggregate coverage amount of $10,000,000. Each party shall shall furnish the other with a certificate showing the applicable coverage, naming the other party as an additional insured, and providing at least thirty (30) days' prior written notice to the other of cancellation, modification or material change to the policy.

8.     *Miscellaneous.* This Agreement shall be binding on and inure to the benefit of each party's successors and assigns. This Agreement may be signed in counterparts. This Agreement is the complete, integrated agreement between the parties on the subject matters herein, and no prior, contemporaneous or subsequent writing, statement or representation shall modify this Agreement. This Agreement may only be modified by written amendment signed by both parties.

Agreed to and accepted this 27th day of September, 2005:

RFS Systems Inc.

By: _Kevin Cosens_
Name: _Kevin C._
Its: _CEO_

Medline Industries, Inc.

By: _____
Name: _Jack A. Bowier, Jr_
Its: _President Primary Care Div._

# Exhibit B

## Exclusivity commitment

### Year 1

Medline agrees to comprehensively test (regionally) the Wand Technology for a period of six months following the issue of 510K. If the test results are satisfactory to Medline, then Medline will introduce the product to its entire acute care sales force over the next six months. Medline will invest in a commercially reasonable amount of literature, training, inventory, in-servicing new accounts and incentives for the sales force. The first year purchase commitment begins after the 510K has been issued and the first shipment is received in a Medline warehouse. The committed purchases volume for year one is $5,000,000.00. In the event Medline fails to satisfy the minimum purchase commitment in any year or period of this Agreement, than RFS' sole remedy shall be terminate Medline's exclusivity or the Agreement in its entirety; under no facts or circumstances shall Medline be liable to RFS for damages for any failure to satisfy any committed purchase requirement.

Year 2 Purchase commitments will be double first year actual sales

Year 3 through 5 commitments will be mutually agreed upon.

If Medline fails to meet the commitment in year 2 through 5, exclusivity will be waived but Medline retains the right to buy and sell the wand technology/products. If RF Surgical establishes their own sales force/ or distributor, they will not target/convert any account where Medline is already selling the RF Surgical products for two years.

## Wand Terms

Medline wand acquisition cost is $28.00 for the first year. Wand acquisition price can be adjusted annually based upon market conditions (upward or downward), working to maintain Medline's minimum goal of 32% GP.

Medline payment terms for wand will be one day net dating.

Medline will pay for shipping.

Computer/monitors will be provided on a demo-/loaner basis to Medline's hospitals that commit to annual contracts to purchase RFS wand and disposable products. Medline will

supply copies of hospital's contract to RF Surgical before monitors are shipped to hospitals.

Medline's sales force will be responsible for bi-annual inventory control of monitors.

# Tag Terms

Medline's tag acquisition cost for the first year is six cents per tag.

Medline will be responsible for tag attachment to their sponge and gauze products.

Payment and shipping terms will be same as Wand above.

Medline or its manufacturing agents will not seek or apply for intellectual property rights or patents related to any aspect of our products or systems.

(?)

# VENDOR CONFIDENTIALITY ACKNOWLEDGMENT

This signed writing is an amendment to that certain Exclusive Sales Agreement (the "Agreement"), dated and effective September 27, 2005, by and between RF Surgical Systems, Inc. ("RF, or "you") and Medline Industries, Inc. ("Medline"). You acknowledge, understand and agree to the following:

(a)    Pursuant to Section 2 of the Agreement, Medline shall manufacture the Ancillary Products through third party factories. The identities of, locations of and other information concerning the factories, which will be disclosed to you in the course of performing the Agreement, are facts that Medline intends to keep secret from its competitors;

(b)    the terms of your agreements with Medline and its factories, including but not limited to the costs of, specifications, design and processes for, and your prices to Medline of the products sourced through the factories is information that Medline intends to keep secret from its competitors;

(c)    you, as a manufacturing vendor with knowledge of the secret information described in (a) and (b) above, have maintained and will continue to maintain the confidentiality of this information and any other information about Medline and your relationship with Medline and/or its factories, and have not disclosed and will not disclose this information to Medline's competitors, or anyone else, without Medline's written consent; and

(d)    For the duration of your Agreement with Medline, plus a period of two years thereafter, you will not sell products, directly or indirectly through any distributor or competitor of Medline, for resale and/or importation into the United States, that are of the same type and kind as those sourced through the factories pursuant to the Agreement.

Medline Industries, Inc.

By: _____
Its: _Predident Primary Care_
Date: _2-7-06_

RF Surgical Systems, Inc.

By: _____ KCrssens
Its: _CEO_
Date: _02/20/06_

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

FILED-CF
CLERK OF THE CIRCUIT COURT
COOK COUNTY, ILLINOIS
2008 JUL 22  PM 2: 34

MEDLINE INDUSTRIES, INC.,

    Plaintiff,

v.

RF SURGICAL SYSTEMS, INC.

    Defendant.

)
)
)
)
)
)
)
)
)
)

Case No.  08 CH 25802

**JURY DEMANDED**

**NOTICE OF MOTION**

To:    RF Surgical Systems, Inc.
    c/o Summit Law Group PLLC, registered agent
    315 5th Avenue South, Suite 1000
    Seattle, WA 98104

PLEASE TAKE NOTICE that on the 28th day of July, 2008 at 10:00 .m. or as soon thereafter as counsel may be heard, Counsel for Medline Industries, Inc. shall appear before the Honorable Judge Sophia Hall, or any Judge sitting in her stead, in room number 2301, in the Circuit Court for Cook County, Illinois, Chancery Division and present the parties' **Motion for Leave to File First Amended Complaint,** a copy of which is attached hereto and hereby served upon you.

Respectfully submitted,

MEDLINE INDUSTRIES, INC.

By: _____
    One of its Attorneys

Edward F. McCormack
NIXON PEABODY LLP
161 North Clark Street
Suite 4800
Chicago, IL 60601
(312) 425-3900
Firm ID. No. 43523

CHICAGO 256385v1 13786-00260

# CERTIFICATE OF SERVICE

I, Edward F. McCormack, state that I caused a copy of the foregoing Motion for Leave to File First Amended Complaint, to be served first class mail, postage prepaid delivery on July 22, 2008 upon:

RF Surgical Systems, Inc.
c/o Summit Law Group PLLC, registered agent
315 5th Avenue South
Suite 1000
Seattle, WA 98104

Edward F. McCormack

CHICAGO 256385v1 13786-00260